UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS M. FLOHR d/b/a EMERGING MARKETS GROUP,<br><br>       Plaintiff,<br>v.<br><br>INTERNATIONAL BUSINESS ASSOCIATES, LTD.,<br><br>       First Defendant,<br>v.<br><br>INTERNATIONAL BUSINESS ASSOCIATES HOLDINGS CO., LTD., INTERNATIONAL BUSINESS ASSOCIATES (USA), INC., JOHN KEAN, JR., and STANLEY BROWNELL,<br><br>       Second Defendants,<br><br>HARKEN ENERGY CORPORATION,<br><br>       Third Defendant. | FILE NO. 07 CV 2920 (RWS)<br><br>**ECF CASE** |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND TO COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS PURSUANT TO THE PARTIES' AGREEMENT TO SUBMIT ALL SUCH DISPUTES TO BINDING ARBITRATION**

CONNELL FOLEY LLP
888 Seventh Avenue
New York, New York 10106
(212) 262-2390
Attorneys for Defendants
International Business Associates, Ltd.,
International Business Associates Holdings
Co., Ltd., International Business Associates
(USA), Inc., John Kean, Jr. and Stanley Brownell

1831723-01

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF UNDISPUTED FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    THE FEDERAL LAW FAVORING THE ENFORCEMENT OF
    PARTIES' AGREEMENTS TO ARBITRATE THEIR DISPUTES
    REQUIRES THE ENFORCEMENT OF THE PLAINTIFFS'
    AGREEMENT TO SUBMIT THIS DISPUTE TO ARBITRATION . . . . . . . . 4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF AUTHORITIES

**Page**

*Cases Cited*

Bensadoun v. Jobe-Riat, 316 F.3d 171
    (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Circuit City Stores, Inc. v. Adams,
    532 U.S. 105 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Gilmer v. Interstate Johnson Lane Corp.,
    500 U.S. 20 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Harris v. Green Tree Fin. Corp., 183 F.3d
    173 (3d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
    460 U.S. 1 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Seus v. John Nuveen & Co., 146 F.3d 175,
    178 (3d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Shaw Group Inc. v. Triplefine International Corp.,
    322 F.2d 115 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

Southland Corp. v. Keating, 465 1, 10 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Statutes Cited*

9 U.S.C. § 1 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
9 U.S.C. § 2 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
29 U.S.C. § 621 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## **PRELIMINARY STATEMENT**

Defendants International Business Associates, Ltd., International Business Associates Holdings Co., Ltd., International Business Associates (USA), Inc., John Kean, Jr., and Stanley J. Brownell (collectively referred to herein as the "IBA Defendants"), hereby move to dismiss the Complaint or, alternatively, to stay this matter pending arbitration, based on plaintiff's failure to submit this matter to binding arbitration pursuant to the parties' written contract (hereinafter the "Agreement").

Plaintiff admits in the Complaint that it entered into the Agreement on or about September 8, 2004 (Complt., ¶ 11). (A copy of the Parties' Agreement is attached to Plaintiff's Complaint and is annexed hereto as Exhibit A.) The Agreement contains sweeping language, expressly providing that "[a]ny disputes" (emphasis supplied) arising between the parties under the Agreement are to be resolved "by arbitration," with the decision to be "final and binding …." (Emphasis supplied.)

Accordingly, the IBA defendants hereby move for an Order dismissing the Complaint or staying the action and compelling plaintiff to submit the matter to arbitration.

1831723-01

## STATEMENT OF UNDISPUTED FACTS

The relevant facts for purposes of this motion are simple. Plaintiff Thomas M. Flohr, doing business as Emerging Markets Group (hereinafter "EMG"), has filed a Complaint arising from a contract that EMG entered with defendant International Business Associates, Ltd. ("IBA Ltd.") on or about September 8, 2004. (Complt., ¶11.) For its part, IBA Ltd. was acting on behalf of itself "and on behalf of each and every Second Defendant, jointly and severally …." (Complt., ¶ 11). Pursuant to the Agreement, EMG was to act as a "broker, finder, and perform other certain services for and on behalf of [the IBA Defendants]". (Id.) In exchange for these services, EMG was to receive certain fees. (Id.) The defendants have failed to pay the fees claimed by plaintiff, thus giving rise to this disputed matter. Defendants deny that plaintiff is due the amounts claimed.

The Agreement forming the contractual relationship between and among the parties is entitled "Fee Agreement." (Complt., ¶ 11; see also Exhibit A annexed to this Brief.) That Agreement expressly provides that all disputes are to be resolved through binding arbitration:

> "Any disputes under this agreement will be resolved by arbitration among two lawyers or accredited arbiters, one each chosen by EMG and IBA, Ltd., selected within 30 days of notice of a dispute, and a third lawyer or accredited arbiter selected within 30 days by initial lawyer(s) and arbiter(s). The arbitration will be resolved by majority determination of such representatives within not more than an additional 60 days …. The arbitrated decision will be final and binding on EMG."
> (See Exhibit A hereto, ¶ 3.) (Emphasis supplied).

The Agreement was signed by plaintiff Thomas M. Flohr on behalf of EMG on September 8, 2004. (Id. at 2).

Rather than abide by the clear and express terms of its Agreement, plaintiff brings this federal action in violation of the arbitration clause contained in the Agreement it

otherwise seeks to enforce. The IBA Defendants now move to dismiss the Complaint and to compel plaintiff to submit this matter to binding arbitration. Alternatively, defendants move to have this action stayed pending the mandated arbitration.

**LEGAL ARGUMENT**

**POINT I**

**THE FEDERAL LAW FAVORING THE ENFORCEMENT OF PARTIES' AGREEMENTS TO ARBITRATE THEIR DISPUTES REQUIRES THE ENFORCEMENT OF THE PLAINTIFF'S AGREEMENT TO SUBMIT THIS DISPUTE TO ARBITRATION.**

The parties' Agreement is one involving interstate commerce and is thus governed by the Federal Arbitration Act. See 9 U.S.C. § 1 et seq. Shaw Group Inc. v. Triplefine International Corp., 322 F.2d 115, 120 (2d Cir. 2003) (citing various Supreme Court cases). Congress enacted the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), in 1925 "to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate Johnson Lane Corp., 500 U.S. 20, 24 (1991).[1] See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 112 (2001); Harris v. Green Tree Fin. Corp., 183 F.3d 173, 178 (3d Cir. 1999); See also Seus v. John Nuveen & Co., 146 F.3d 175, 178 (3d Cir. 1998) (The FAA provides that arbitration agreements are "enforceable to the same effect as other contracts.").

In enacting section 2 of the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). **MOST IMPORANTLY, THE SUBSTANTIVE PROTECTIONS OF THE FAA APPLY IRRESPECTIVE OF WHETHER ARBITRABILITY IS RAISED IN FEDERAL OR STATE COURT.** Id. at 16. In Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001), the United States Supreme

---

[1] According to section 2 of the FAA, "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract or transaction...shall be valid, irrevocable, and enforceable save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994).

Court reaffirmed the strong federal public policy under the FAA in favor of enforcing parties' agreements to arbitrate disputes.

The Supreme Court in Circuit City continued to recognize the "real benefits to the enforcement of arbitration provisions," stating:

> Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts. These litigation costs to parties (and the accompanying burden to the Courts) would be compounded … [if] state law precludes arbitration of certain types of employment claims but not others.

532 U.S. at 122-23.

The Supreme Court concluded in Circuit City that if the FAA were construed so as to hinder the enforceability of arbitration agreements in employment contracts, it "would call into doubt the efficacy of alternative dispute resolution procedures adopted by many of the Nation's employers, in the process undermining the FAA's pro-arbitration purposes…." Id.

In Gilmer, the Supreme Court upheld an agreement to arbitrate a claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. The Court reiterated that arbitration agreements can be enforced without contravening the policies of legislative enactments that give employees specific statutory protections. 500 U.S. at 26-29. The Court explained that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Id. at 26, citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). Moreover, the Gilmer Court noted, "[s]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of

action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." 500 U.S. at 28, quoting Mitsubishi Motors Corp., supra, 473 U.S. at 637.

In light of the strong federal policy favoring arbitration agreements, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983). This strong policy is followed under New York law as well. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 176 (2d Cir. 2003). Thus, sweeping language providing for "any controversy" among the parties to be "settled by arbitration," was read "to indicate an intent to have arbitrability decided by the arbitrators." Shaw Group Inc. v. Triplefine International Corp., 322 F.2d 115, 121 (2d Cir. 2003) (citing Smith Barney Shearson Inc. v. Sacharow, 91 N.Y. 2d at 43, 46, 666 N.Y.S. 2d at 991, 994, 689 N.E. 2d 884).

In this case, as recognized in Shaw Group, the parties used sweeping language to ensure that "all disputes" among them would be arbitrated. Accordingly, the Complaint should be dismissed based on plaintiff's failure to submit its claims to arbitration as required under the parties' Agreement.

1831723-01                                    6

## CONCLUSION

For all of the foregoing reasons, the IBA Defendants respectfully submit that the Complaint should be dismissed and the matter referred to binding arbitration in accordance with the parties' Agreement. Alternatively, the IBA Defendants respectfully request that this action be stayed pending the required arbitration.

        Respectfully submitted,

        CONNELL FOLEY LLP
        Attorneys for Defendants
        International Business Associates, Ltd.,
        International Business Associates Holdings
        Co., Ltd., International Business Associates
        (USA), Inc., John Kean, Jr., and
        Stanley Brownell

        By:    s/Peter J. Pizzi
                   Peter J. Pizzi (PP6500)

DATED: May 17, 2007

8

# EXHIBIT A

# Fee Agreement
# Between
# Emerging Markets Group and International Business Associates, Ltd.

The Parties hereto, hereby agree to the following terms with regards to any fees due and payable to Thomas M. Flohr, or Emerging Markets Group, or any of its affiliates (together "EMG"), by International Business Associates, Ltd. ("IBA Ltd."), related to the proposed transaction between Harken Energy Corporation and/or any of its affiliates and IBA Ltd. (these two hereinafter referred to as the "Transaction Parties") as described in the Letter of Intent dated August 10, 2004 and as more fully described in pending agreements between the Transaction Parties.

1. The total fee payable to by IBA Ltd. to EMG with regards to transactions between the Transaction Parties shall be $400,00.00, which shall become payable upon closing of the aforementioned transaction.

2. The fee shall be payable as follows:
   a) $100,000 payable by check or wire transfer, once the funds set forth in the above referenced transaction have been received by and are available to IBA Ltd., to EMG in such names and accounts as EMG may designate.
   b) $300,000 shall be amortized in conjunction with the redemption of the $12,500,000 IBA Ltd. Series A Preferred Shares as set forth below. Commencing with the first allocation of funds for retirement of such shares, EMG shall receive an amount equivalent to 2.35% of such funds (rounded to the nearest $100) until such time as the full amount due to EMG has been paid.

   For Example:
   Beginning Balance due EMG: $300,000
   Funds available for retirement of preferred: $2,300,000

   Payment to EMG to be calculated as follows:
   (2.35% x Funds available for retirement of preferred = Amount to be paid to EMG)

   2.35% x $2,300,000 = $54,050

   Remaining balance following above payment:    $245,950

   Payments made under this Section 2. b) shall be payable by check or wire transfer, to EMG in such names and accounts as EMG may designate.

3. IBA Ltd. hereby indemnifies EMG from liabilities to any unaffiliated third party arising from work performed by EMG in connection with the proposed transaction referenced above, other than those arising from the gross negligence of EMG or those expenses, out-of-pocket or otherwise, that have not been previously approved by IBA Ltd. Any disputes under this agreement will be resolved by arbitration among two lawyers or accredited arbiters, one each chosen by EMG and IBA Ltd., selected within 30 days of notice of a dispute, and a third lawyer or accredited arbiter selected within 30

days by the initial lawyer(s) and arbiter(s). The arbitration will be resolved by majority determination of such representatives within not more than an additional 60 days and the cost of the arbitration will be allocated by the arbitration between EMG and IBA Ltd. The arbitration may be conducted informally or as agreed by the arbiters. The arbitrated decision will be final and binding on EMG.

4. The laws of the State of New York will govern this Agreement, and EMG and IBA Ltd. consent to jurisdiction and service of process in New York, and entry of judgment in the States of New York and New Jersey.

This letter agreement supersedes all other understandings between the parties, whether written or oral, with regard to any fees due or payable between EMG and IBA Ltd.

International Business Associates, Ltd.

By _____
John Kean, Jr.
President & CEO

Date: September 8, 2004

Emerging Markets Group

By _____
Thomas M. Flohr
General Partner

Date: September 8, 2004